IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| STANLEY SCOTT BRISON,<br><br>   Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>*Acting Commissioner of Social Security*,<br><br>   Defendant. | §<br>§<br>§<br>§<br>§   Civil Action No. 4:20-cv-836-SDJ-KPJ<br>§<br>§<br>§<br>§<br>§ |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Stanley Scott Brison ("Mr. Brison") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits and supplemental security income. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

I. APPLICABLE LAW

A.  **Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

### B. Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.        BACKGROUND AND PROCEDURAL HISTORY

Mr. Brison was born in 1968, completed high school, and last worked as a building superintendent.[4] *See* Tr. 23, 40–41. On February 15, 2018, Mr. Brison filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). *See* Tr. 15, 67–68, 200–13. In both applications, Mr. Brison alleged disability since January 1, 2017, due to bipolar disorder, posttraumatic stress disorder ("PTSD"), amphetamine abuse, and cannabis abuse. *See* Tr. 71, 81, 200, 212. The Social Security Administration ("SSA") denied Mr. Brison's claims initially on May 10, 2018, and upon reconsideration on October 25, 2018. *See* Tr. 120–26, 131–38. Thereafter, Mr. Brison filed a written request for a hearing. *See* Tr. 139–40. On September 26, 2019, Administrative Law Judge Mark Mendola (the "ALJ") held a hearing. *See* Tr. 31–66. The hearing was attended by Mr. Brison, his attorney, and a vocational expert (the "VE"). *See* Tr. 31.

On November 26, 2019, the ALJ issued an unfavorable decision denying Mr. Brison's claims. *See* Tr. 12–25. In his decision, the ALJ found that Mr. Brison met the insured status requirements of the Social Security Act (the "Act") through June 30, 2018. *See* Tr. 17. At step one, the ALJ found that Mr. Brison had not engaged in substantial gainful activity since January 1, 2017, his alleged onset date. *Id*. At step two, the ALJ found that Mr. Brison had the following severe impairments: bipolar disorder and PTSD. *Id*. The ALJ found that Mr. Brison's amphetamine use disorder and cannabis use disorder were non-severe impairments; in addition, the ALJ determined that Mr. Brison's hearing impairment was not a medically determinable impairment, and that even if it was medically determinable, it was non-severe. *See* Tr. 18. At step three, the ALJ found that none of Mr. Brison's impairments, alone or in combination, met or medically

---

[4] Documents 11-1 through 11-33 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

equaled a Listing. *See* Tr. 18–20. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Brison's RFC. *See* Tr. 20–23. The ALJ found Mr. Brison had the RFC to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: [He] can understand, remember, and carry out simple tasks. [He can] occasionally interact with the general public but cannot perform customer service transactions. [He] can work in proximity to coworkers and supervisors but cannot perform tandem tasks or teamwork activities. [He] can respond to normal work pressures and changes in a routine work environment.

*See* Tr. 20. At step four, the ALJ found that Mr. Brison was unable to perform his past relevant work. *See* Tr. 23. At step five, the ALJ determined that considering Mr. Brison's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy he could perform. *See* Tr. 23–24. Relying on the VE's testimony, the ALJ determined that Mr. Brison could perform occupations such as dishwasher, hand packager, and laundry worker. *See* Tr. 24. Accordingly, the ALJ concluded Mr. Brison was not disabled within the meaning of the Social Security Act (the "Act"). *Id*.

Mr. Brison requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 196–99, 293–95. On August 25, 2020, the Appeals Council denied the request for review. *See* Tr. 1–3. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Mr. Brison timely filed his appeal to this Court on October 23, 2020.[5] *See* Dkt. 1.

---

[5] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 2.

### III.   ANALYSIS

Mr. Brison raises a single argument on appeal. He argues that the ALJ erroneously failed to consider whether Mr. Brison's ability to maintain employment was limited by the frequency of his ongoing mental health treatment. *See* Dkt. 16 at 6–8. The Commissioner counters that the ALJ properly formulated Mr. Brison's RFC, and did not err in his step five finding that Mr. Brison was able to perform other jobs that existed in significant numbers in the national economy. *See* Dkt. 20 at 4–7. As set forth below, the Court finds that Mr. Brison's argument is meritorious and, therefore, remand is warranted.

Social Security regulations provide that the ALJ, in assessing a claimant's RFC, "must discuss the [claimant's] ability to perform sustained work activities in an ordinary work setting on 'a regular and continuing basis.'" SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The regulations define "a regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* Relevant here, the Fifth Circuit has explained that "if an individual's medical treatment significantly interrupts the ability to perform a normal, eight-hour work day, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

In this case, the administrative record includes extensive mental health treatment records. These records show that Mr. Brison received regular mental health treatment at Denton County MHMR Center ("MHMR") for at least two years prior to his September 2019 hearing before the ALJ. *See* Tr. 309–445 (treatment notes dated May 2017 to January 2018); Tr. 450–963 (treatment notes dated January 2018 to May 2019); Tr. 975–1757 (treatment notes dated June 2019 to September 2019). In his opening remarks to the ALJ during the hearing, Mr. Brison's attorney argued that Mr. Brison was unable to engage in substantial gainful activity because the severity of

his mental conditions was such that he needed weekly mental health treatment that took a significant amount of time. *See* Tr. 37. Mr. Brison testified during the hearing that he had three appointments at MHMR each week—one of these appointments was for medication refills because Mr. Brison was not authorized to fill prescriptions elsewhere. *See* Tr. 57–58 (Mr. Brison testifying that he cannot fill his medications at pharmacies anymore because he previously saved "a bunch of [his] medicine to kill himself"). The other two weekly appointments at MHMR were for counseling or therapy, and to meet his case worker. *See* Tr. 57 ("I go for drug counseling . . . or cognitive therapy counseling. And then I have to see my case worker once a week."). Mr. Brison indicated that each MHMR appointment typically lasted at least an hour. *Id.* Mr. Brison further testified that he used a bus for transportation to these appointments, with it generally taking an hour in each direction. *Id.* During the hearing, the VE testified that for unskilled work, the tolerance for time spent off task was no more than ten percent of the day and the tolerance for absenteeism was no more than two days per month. *See* Tr. 62.

In his written decision, the ALJ noted that Mr. Brison sought "consistent [mental health] treatment." *See* Tr. 22. Aside from this general statement, the ALJ did not consider whether Mr. Brison's frequent mental health treatment limited his ability to sustain employment on a regular and continuing basis. Nor did the ALJ address the VE's testimony regarding limited tolerance for absenteeism. Under *Newton*, the Court concludes that the ALJ's failure to address this issue at all in his decision constitutes error. Mr. Brison presented ample evidence of his ongoing frequent mental health treatment and squarely raised this issue during the hearing. Coupled with the vocational expert's testimony regarding limited tolerance for absenteeism or time spent off task, the ALJ erred in failing to address whether Mr. Brison's ongoing mental health treatment eroded his ability to perform other work. *See, e.g.*, *Wingate v. Astrue*, No. H-08-1966, 2009 WL 3064685,

7

at *19 (S.D. Tex. Sept. 21, 2009) (finding the ALJ erred in failing to discuss claimant's ability to maintain employment where the vocational expert testified that "no more than two absences from work per month would be tolerated" and claimant's medical records showed a high frequency of ongoing mental health treatment—"at least 58 medical appointments over 35 separate days" in a six month period); *Perez v. Saul*, No. 4:18-cv-3472, 2020 WL 4677574, at *8 (S.D. Tex. June 22, 2020) (finding the ALJ committed harmful error by failing to address the effect of claimant's frequent medical appointments on his ability to maintain substantial gainful employment where medical records showed "nine medical appointments during the month of the hearing and . . . the vocational expert stated that in a comparable hypothetical, more than two absences from work per month due to medical appointments would generally preclude competitive employment"); *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980) (holding because claimant's daily treatment program for his back condition "would significantly interrupt a normal, eight-hour work day, it was incumbent upon the ALJ and the Secretary to ascertain whether [the claimant's] need for frequent daily traction precluded him from engaging in gainful activity").

The Commissioner's argument to the contrary is not persuasive. Looking at some of Mr. Brison's recent treatment records, the Commissioner contends that the "actual time [Mr. Brison] needed for his appointments was minimal when compared to the times available for work." *See* Dkt. 20 at 5. The Commissioner further argues "there is more than enough time for [Mr. Brison] to both attend appointments at MHMR and work a full-time job." *Id.* at 6. The Court acknowledges that similar timing-type arguments have been raised in other cases. *See, e.g., Sly v. Kijakazi*, No. 3:21-cv-208, 2022 WL 2082318, at *3 (S.D. Miss. May 24, 2022) ("A person is disabled when they are afflicted with limitations that prevent them from any substantial gainful activity, not when time constraints from impairments might foreclose a traditional employment schedule."), *R. & R.*

8

*adopted*, 2022 WL 2079874 (S.D. Miss. June 9, 2022). Those cases are easily distinguishable because the claimants there, unlike Mr. Brison, had not presented evidence of ongoing, persistent and lengthy treatment. *Sly*, 2022 WL 2082318, at *3 (determining "the ALJ was not required to determine whether the effect of [claimant's] treatment precluded her from being able to perform other relevant work" where claimant's chemotherapy and radiation had been completed and no evidence was presented to suggest ongoing frequent treatment); *Oestreich v. Comm'r of Soc. Sec.*, No. 4:16-cv-152, 2016 WL 11259034, at *4 (N.D. Tex. Dec. 19, 2016) (finding no error because claimant "did not argue at the administrative hearing that any condition required [p]ersistent and lengthy therapy, thereby preventing any employment" and claimant waited until appeal to present evidence that during a certain period, she went to aqua therapy two or three times a week), *R. & R. adopted*, 2017 WL 1503155 (N.D. Tex. Apr. 27, 2017). The Commissioner's argument lacks merit for two other reasons: first, as Mr. Brison points out, the argument overlooks Mr. Brison's travel time to and from his MHMR appointment(s); second, because the ALJ did not give consideration to this issue in his decision, the Commissioner's argument is improper post-hoc rationalization. *See Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision."); *see also Johnson v. Colvin*, No. 3:16-cv-69, 2017 WL 86139, at *5 (N.D. Tex. Jan. 10, 2017) (stating that "[r]eviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ.").

Thus, remand is warranted so that the ALJ may address whether the frequency of Mr. Brison's mental health treatment "significantly interrupts [Mr. Brison's] ability to perform a normal, eight-hour work day," and if so, "whether the effect of treatment precludes [Mr. Brison] from engaging in gainful activity." *See Newton*, 209 F.3d at 459.

## IV.   RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 12th day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE